**John T. P. HAUGHEY, Plaintiff,**

**v.**

**B. J. RHAY, Superintendent of Washington State Penitentiary; Dale Fuller, Counselor at Washington State Penitentiary; and Carl Maxey, Attorney at Law, Defendants.**

**No. 3228.**

United States District Court
E. D. Washington, N. D.

June 4, 1969.

As Amended June 16, 1969.

---

Slade Gorton, Atty. Gen. of Washington, Olympia, Wash., for defendants.

John T. P. Haughey, in pro. per.

## ORDER ON MOTIONS

EAST, District Judge.

This cause and the various motions of the parties now pending have been assigned to the undersigned U. S. Senior District Judge by Chief Judge Charles L. Powell for determination.

The petitioner (Haughey) instituted these in forma pauperis proceedings by the filing of a propria persona (pro per)

petition under the title and caption above. The allegations and claims of Haughey are set forth as answers to form questions contained in this court's standard form of a pro per Petition for Writ of Habeas Corpus for state prisoners, with a pleading entitled "Action in Equity for: Damages" with a copy of a pleading to a Washington State Court attached.

It appears that Haughey was convicted by the Court without a jury of the crimes of Second Degree Murder and Second Degree Assault in the Superior Court of the State of Washington for Spokane County, and was sentenced thereunder on June 7, 1965, to twenty years and ten years imprisonment for the respective crimes, to run concurrently. Since the conviction Haughey has been in the physical custody of first, the superintendent of Washington State detention facility at Shelton, Washington, later and presently of the defendant Rhay (Rhay), as superintendent of the Washington State Prison.

This court will treat and deal with Haughey's petition and its attachments as a complaint in a Civil Rights Action pursuant to the provisions of Section 1983, Title 42, U.S.C.A.

"Section 1983. Civil Action for Deprivation of Rights.

"Every person who, under color of any * * * regulation, custom, or useage, of any State * * * subjects, or causes to be subjected, any citizen * * * or other person within the jurisdiction (of the United States) to the deprivation of any rights privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in * * * proper proceeding for redress."

I will deal with the various motions of the parties in the chronological order of filing, except for the two motions of Haughey filed under date of May 20, 1969.

## HAUGHEY'S MOTION TO BE TURNED OVER TO THE U. S. MARSHALL (2–18–69)

There is no office for such a motion under either the Acts of Congress nor the Federal Rules of Criminal Procedure, and further the substance of the motion is now moot.

## HAUGHEY'S MOTION FOR THE SETTING UP OF A THREE JUDGE COURT FOR THE HEARING AND DETERMINATION OF THIS CAUSE (2–27–69)

The mandate for and the procedure to be followed in setting up a three judge district court is delineated in Section 2284, Title 28, U.S.C.A.

The gist of Haughey's allegations and claims against Rhay and the defendant Fuller (Fuller) is that of internal administrative action and disciplinary management of the Washington State Prison by the two officials, being federally illegal and unconstitutional rules, regulations, action and nonaction thwarting Haughey in presenting legal claims to the courts, and adverse to his health. The gist of his allegations and claims against the defendant, Maxey (Maxey), is that Maxey and Rhay conspired to prevent him in having access to the courts by refusing opportunity to have the trial transcript and court records.

The federal duties owed Haughey in this respect by the prison authority are delineated by the following language of the United States Supreme Court in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969):

"There is no doubt that discipline and administration of state detention facilities are state functions. They are subject to federal authority only where paramount federal, constitutional or statutory rights supervene. It is clear, however, that in instances where state regulations applicable to inmates of prison facilities conflict with such rights, the regulations may be invalidated."

" * * * it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."

These same federal duties were delineated in Hatfield v. Bailleaux, 290 F.2d 632 (9 Cir. 1961).

Hatfield also tells us that a three judge district court must be convened where an attack is made on the constitutionality of an administrative order or action of general application representing the custody state's policy but not where state policy is not involved.

■ Haughey does not allege any facts, nor does it appear from the substance of his petition and claims that he can on amendment, that tends to place the possible issues in this cause under the purview of Section 2284, supra, or the teachings of Johnson and Hatfield. Accordingly, the motion is denied.

## HAUGHEY'S MOTION TO INCLUDE THE WIVES AND ESTATES OF THE DEFENDANTS AS ADDITIONAL PARTIES (2–27–69)

Except for the action of this court to be taken on the defendants' motions for summary judgment, leave would be granted for Haughey to join as parties defendant the communities of any married defendant now named. Accordingly, the motion is denied.

## HAUGHEY'S MOTION FOR WRIT OF SCIRE FACIAS ON RHAY AND MAXEY (3–13–69)

This motion is premature and is held in abeyance.

## HAUGHEY'S MOTION FOR PRODUCTION OF NOTARYS' PUBLIC LOG BOOKS (3–13–69)

This motion is premature and is held in abeyance.

## PRAECIPE TO THE CLERK FOR SUBPEONA DUCES TECUM ON STANLEY HANSON (3–13–69)

This request is premature and is held in abeyance.

## HAUGHEY'S MOTION FOR JUDGMENT UPON THE DEFAULTS OF RHAY, FULLER AND MAXEY (4–3–69)

■ It appears from the records that Rhay and Fuller filed their respective Answers and affirmative defenses to Haughey's petition on April 25, 1969, and Maxey filed his Answer on April 11, 1969, all more than twenty days from the date of the Marshall's service of summons on March 6, 1969. While neither Rhay, Fuller nor Maxey sought leave for late filing in face of the Motion for Defaults, nevertheless an Order of Default is under any circumstances discretionary with the Court. Lau Ah Yew v. Dulles, 236 F.2d 415 (9 Cir. 1956). Due to the nature and obscurity of the cause and of damage to Haughey, I elect to and do deny the motion.

## HAUGHEY'S MOTION TO DISMISS THE MOTIONS OF RHAY AND FULLER FOR JUDGMENT ON THE PLEADINGS (2–20–69)

■ There is no office for this motion and the same is denied.

## HAUGHEY'S MOTION FOR ALLOWANCE TO FILE ANCILLARY AFFIDAVIT (2–20–69)

This appears to be a request to amend Haughey's petition. The request is allowed and the affidavit will stand as an amendment to Haughey's petition. The denials in the respective Answers of Rhay, Fuller and Maxey will stand as a denial of the amendment.

## MOTIONS OF RHAY AND FULLER FOR JUDGMENT ON THE PLEADINGS (5–8–69)

Maxey did not formally join in the above motion of Rhay and Fuller. However, Maxey, in his Answer, prays that " * * * the Court dismiss the cause of action and that Plaintiff take nothing thereby * * *." Therefore, I will treat the motion of Rhay and Fuller and the prayer of Maxey as a motion on their respective part for summary judgment herein, pursuant to Rules 12(c) and

494

56(c), Federal Rules of Civil Procedure. Rule 56(c) supra provides inter alia:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

█ I take judicial notice that Haughey's judgment of conviction and sentence were timely appealed to the Washington Supreme Court and affirmed. State of Washington et al. v. Haughey, 68 Wash.2d 974, 414 P.2d 49. On appeal Haughey was represented by court appointed counsel, Carl Maxey.

██ Haughey claims his petition to the United States Supreme Court for an extension of time within which to file a "petition (Writ of Certiorari) was returned without a hearing (because it) was held too long by prison authorities ("at Shelton facility"), throwing (him) in laches." I take judicial notice that the Clerk of the United States Supreme Court does not refuse the filing of a meritorius pro per petition for Writ of Certiorari from a forma pauperis state prisoner on the sole grounds of laches; furthermore, I take judicial notice of the legislative and executive acts and action of the State of Washington as respects penal institutions. The Washington State Prison at Walla Walla (Eastern Washington) and the dentention facility at Shelton (Western Washington) are separate and distinct institutions, under separate and distinct superintendent authority, and neither Rhay nor Fuller were in authority "at Shelton facility" during Haughey's attempt to get the ear of the United States Supreme Court concerning his judgment of conviction and sentence. Haughey has non-joined proper parties defendant in this cause.

It appears from Haughey's allegations that he has sought further access to the courts for relief from his judgment of conviction and sentence in five causes, with results as follows:

A pro per in forma pauperis petition to the Washington Supreme Court for a Writ of Mandate, refused on May 31, 1961.

A pro per in forma pauperis appeal to the United States Supreme Court, denied on July 5, 1967.

A pro per in forma pauperis petition for Habeas Corpus and Assistance to the Superior Court of the State of Washington for Walla Walla County, on November 16, 1967, was dealt with and denied.

A pro per in forma pauperis appeal to the Washington Supreme Court resulted with an affirmal.

His pro per in forma pauperis petition to the United States Supreme Court for Writ of Certiorari was denied on December 9, 1968.

Finally, Haughey claims:

"From the beginning, plaintiff has shown the other courts that he was not given a sanity hearing separate from the criminal hearing nor adjudicated in the manned (sic) provided by Statutes of Wash., and has applied for assistance to get aid in getting his trial transcripts, so as to more properly prepare his petition, has always been refused."

The answer to this claim is simply that State of Washington v. Haughey, supra, specifically dealt with this issue adverse to Haughey.

In any event, there are no facts alleged nor shown by the affidavit which in anywise tend to show any thwarting or blocking action or non action on the part of either Rhay, Fuller or Maxey on any of Haughey's attempts to gain judicial relief, nor does it appear that the alleged non-access to the trial transcript and court records has in anywise "denied or obstructed" Haughey's "access * * * to the courts for the purpose of presenting (his) complaints."

Notwithstanding Haughey's assertion of perjury, I find from the affidavit of S. M. Hanson, a correctional sargeant at

the prison, filed May 8, 1969, that during the:

Year of 1966, after July 22, Haughey was on the prison's regularly maintained rotational Legal Library List and had access to the prison Legal Library and his legal file on 28 visits of approximately three and one half hours in length each, and two special permission visits in addition to his regular turn on the List;

Year of 1967, he had 78 such regular visits, and 5 special permission visits;

Year of 1968, 83 such regular visits, including one special permission visit; and

Year of 1969, through April 20, 26 such regular visits, and 2 special permission visits.

In all, a total of 215 such regular visits, and 10 special permission visits.

■ It would appear that the Legal Library List is a regulatory measure for disciplinary purposes and applies to all prisoners. Special permission visits are allowed only "within a ten day court deadline". I cannot say that the establishment and enforcement of the restrictive regulatory Library List and extra day or special permission visit rule are an abuse of discretion or are unreasonable in running a prison, bearing in mind that extra days in the Legal Library break into the routine punishment discipline, especially work details. It seems that Haughey has had more exposure to a legal education, and free and easy access to the court for presentment of his claims, than the ordinary citizen in open society. On Haughey's foregoing claims, I conclude, in the language of Snow v. Gladden, 338 F.2d 999, p. 1000 (9 Cir. 1964), that the petition "fails to state facts sufficient to constitute a cause of action, or upon which the court can grant any relief, and, further that the subject matter of (Haughey's petition) is frivolous", and therefore, as to the foregoing allegations and claims, there is no genuine issue as to any material fact or amount of damages.

It appears from Haughey's ancillary affidavit (now an amendment to his petition), that

On his request of the prison hospital for a "light relaxer", he was given dosages of thorazine to be taken by himself; the medication " * * * caused him to act as if he were a zombie and not able to differentiate correctly matters that might come up * * *." Dr. Keyes, at the prison hospital, upon Haughey's complaint, reduced the dosages to 75 mgs. per day. As a result of the heavy medication and his "zombie" condition, he was, on May 6, 1969, placed in the "insane ward" of the prison hospital, with the understanding that he would be transferred to the (state) mental hospital; the next day, Dr. Keyes discharged him from the ward; and

"This was an additional harassment to cause him to withdraw his suit against the defendants" and to thwart him in completing his pleadings in this cause.

The law of the Ninth Circuit as to prison authorities' federal duties toward the medical care of the prisoners, as it applies here, is set forth in Darey v. Sandritter, 355 F.2d 22 (1965):

"Whether a prisoner, during (presumptively) lawful term, should or should not receive medical treatment in suitable environs, must ordinarily be determined by custodial authorities in proper exercise of sound discretion". p. 23.

See also Snow, supra, and Stiltner v. Rhay, 371 F.2d 420 (9 Cir. 1967).

■ As to the foregoing allegations and claims of inadequate medical placement and treatment, I find no showing of an abuse of discretion or unreasonableness on the part of either Rhay or Fuller, or any of the prison personnel, as to the medical environs placement or medical treatment of Haughey.

As for the alleged federally illegal and wrongful medical placement, care and treatment of Haughey, I again conclude there is no genuine issue as to any material fact or amount of damages.

I further conclude that Rhay, Fuller and Maxey, and each of them, are entitled to judgment against Haughey on all his allegations and claims, as a matter of law.

Therefore, the several motions for a summary judgment against Haughey, in favor of Rhay, Fuller and Maxey, are each allowed and granted. Counsel for Rhay, Fuller and Maxey will submit appropriate judgments within fifteen days. The several motions of Haughey which were filed on March 13, 1969, and held in abeyance by this order, are now moot.