**Vance Alexander CURLEY and James Pearson, Plaintiffs,**

v.

**Agent Cecil M. BRYAN, State Bureau of Investigation, Wilmington, North Carolina, et al., Defendants.**

Civ. A. No. 73–87.

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 9, 1973.

Vance Alexander Curley, pro se.
James Pearson, pro se.

Robert Morgan, Atty. Gen., Russell G. Sherrill, Asso. Atty. Gen., State of North Carolina, for defendants Bryan and Hunt.

Daniel L. McLeod, Atty. Gen., South Carolina, Joseph C. Coleman, Asst. Atty. Gen., Columbia, S. C., for defendants Stephenson, Summerford, King and Sullivan.

## ORDER

SIMONS, District Judge.

This matter is before the court on a Motion to Dismiss filed by defendants Bryan and Hunt.

Plaintiffs, South Carolina state prisoners who are habitual petitioners to this court, instituted this action invoking the declaratory judgment statute (28 U.S.C. § 2201) and the so-called Civil Rights Act (42 U.S.C. §§ 1983 and 1985(3)). The gravamen of the Complaint seems to be plaintiffs' allegation that the defendants Bryan and Hunt, agents of the North Carolina State Bureau of Investigation, together with defendants King and Sullivan, agents of the South Carolina Law Enforcement Division, "did wilfully and knowingly conspire to deprive the plaintiffs of their constitutional rights" by conducting an allegedly illegal search of plaintiffs' residences in North Carolina, and by illegally seizing evidence during that search which was subsequently introduced at plaintiffs' criminal trial in Marion, South Carolina. As to defendants Stephenson, Hennecy (the Sheriff and Deputy Sheriff of Marion County) and Summerford (Solicitor of the Twelfth Judicial Circuit of South Carolina), plaintiffs allege that they "did unethically coerce, encourage and stedfastly support the actions of the seizing officers with wanton disregard of the [plaintiffs'] constitutional rights." The following prayer concludes plaintiffs' *pro se* Complaint:

"WHEREFORE, Plaintiffs pray that this Court:

(a) Declare that plaintiffs have a Constitutionally protected right to

protection against illegally seized evidence being used against them in their trial by jury before the courts of the State of South Carolina.

(b) Enjoin the Defendants and other judicial and law enforcement agencies of the State of North Carolina and South Carolina from employing any scheme which sole purpose is to illegally obtain evidence to be used against indigent or wealthy defendants under indictment or arrest warrant without proper legal procedure, at any time or stage in the proceedings between the State and the accused.

(c) Order the Supreme Court of South Carolina to order the disciplining of the individuals involved, and advise the State Bureau of Investigation of North Carolina of the actions of its officers, further ordering the Supreme Court of South Carolina to instruct the Director of the South Carolina Dept. of Corrections to release from confinement the plaintiffs, and also order as a result of their actions, that the defendants are liable for actual damages in the amount of $500,000 each as a result of such actions.

(d) Enjoin Defendants from any further continuance in restraining plaintiffs of their liberty.

(e) Grant such other and further relief as to this Court seems just and proper."

Thus it appears that the only substantial prayers of plaintiffs are for release from custody and for monetary damages.

Plaintiffs were tried jointly during the April 1968 Term of the Marion County Court of General Sessions on charges of housebreaking, safecracking and larceny. They were each convicted by the jury of at least one of these offenses, and each was sentenced by the Honorable John Grimball, presiding judge, to confinement for a period of fifteen years. They are presently serving these terms in the Central Correctional Institution.

Curley's conviction was affirmed on direct appeal by the South Carolina Supreme Court, State v. Curley, 253 S.C. 513, 171 S.E.2d 699 (1970), and an application for writ of certiorari to the United States Supreme Court was denied, 400 U.S. 834 (1970). Curley sought habeas corpus relief in this court. His petition was provisionally denied by Order filed February 7, 1972, and finally dismissed three months later. Curley v. State of South Carolina, Civil No. 70–1100 (D.S.C., filed May 9, 1972). It should be noted here that this court at that time determined that Curley had not exhausted the available state remedies as to the alleged illegal search of his apartment in North Carolina, since that issue was not presented to or considered by the South Carolina Supreme Court on direct appeal. The only issue disposed of on the merits by this court was Curley's assertion that his automobile was illegally searched while in the possession of a third party. This court found that claim to be without merit. Curley's appeal from this decision was dismissed by the Fourth Circuit (No. 72–1624 filed Aug. 4, 1972; memorandum decision), and certiorari was denied by the Supreme Court, 410 U.S. 984, 93 S.Ct. 1508, 36 L.Ed.2d 180 (1973).

As to Pearson, the state supreme court when considering plaintiffs' joint appeal remanded Pearson's conviction for "an adequate evidentiary hearing on whether by Miranda standards, with respect to the evidence admitted against him, his privilege against self-incrimination was voluntarily and intelligently waived." State v. Curley, *supra,* 171 S.E.2d at 703. An evidentiary hearing was held on that issue, and the trial court determined that Pearson's confessions and actions were done freely and voluntarily, without any duress, coercion or undue influence. Upon consideration of this evidentiary hearing, the state supreme court then affirmed Pearson's conviction by a *per curiam* Order dated

October 20, 1971. Pearson then petitioned this court for habeas corpus (two previous petitions had been dismissed for failure to exhaust state remedies), also asserting the illegality of the search of Curley's automobile. The court considered that issue *de novo* and in some depth, and again concluded that there was no merit to the allegation, thus dismissing Pearson's Petition. Pearson v. State of South Carolina, Civil No. 70-1128 (D.S.C., filed April 17, 1973). Again, the sole issue presented in that Petition was the legality of the automobile search; the issue of any residence search in North Carolina was neither properly presented to nor decided by this court. Pearson's appeal from that Order is presently before the Fourth Circuit.

The instant Motion to Dismiss is posited on two grounds: that plaintiffs are attempting by this action to collaterally attack a criminal judgment of conviction, which they are estopped from doing while the criminal convictions stand undisturbed; and that an action under § 1983 cannot be used to circumvent established habeas corpus proceedings, including the exhaustion of available state remedies.

■ Insofar as plaintiffs' Complaint seeks their release from custody, their sole federal remedy is the writ of habeas corpus, with its attendant requirement of exhaustion of state remedies, and an action under the Civil Rights Act will not lie. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L. Ed.2d 439 (1973). Although exhaustion is not required for the presentation of a valid claim under § 1983, nevertheless the Civil Rights Act cannot be used by a state prisoner to circumvent the requirement that he must exhaust all available state remedies before petitioning the federal court for habeas corpus relief where, as here, plaintiffs seek their release from custody. Denney v. State of Kansas, 436 F.2d 587 (10th Cir. 1971);

Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969); see also Rodriguez v. McGinnis, 451 F.2d 730 (2d Cir. 1971), affirmed on rehearing in banc, 456 F.2d 79 (2d Cir. 1972). In the present action plaintiffs do not allege that they have exhausted the available state remedies insofar as their claim of illegal search and seizure of their North Carolina residences are concerned. Although plaintiffs have directly appealed their convictions to the state supreme court, and they have each pursued federal habeas corpus to some extent, in none of these actions to this court's knowledge has the issue of any North Carolina search and seizure been properly presented or litigated.[1] Thus insofar as plaintiffs seek their release from custody on the basis that fruits of an illegal search were used against them at their trial, this Complaint must be construed as a Petition for a Writ of Habeas Corpus, which must be denied for plaintiffs' failure to exhaust the available state remedies insofar as that particular issue is concerned. 28 U.S.C. § 2254(b).

■ The remaining prayer of plaintiffs is for monetary damages as a result of the alleged illegal search. However, the legality of the questioned search was upheld by the trial judge in plaintiffs' criminal trial, for the transcript of that trial reveals that plaintiffs' counsel specifically moved to suppress the fruit of the search here complained of (a shirt), which Motion was overruled. As detailed above, the question was not pursued on direct appeal, nor have plaintiffs (to the knowledge of this court) collaterally presented it to any state court in a post-conviction proceeding, nor has any federal court reached that issue on the merits. Thus the alleged "illegal" search upon which plaintiffs base their claim for damages has never been found to be "illegal" by any court; rather, the only court which has ruled on the issue at least inferentially found the search to be proper.

1. This court has a good deal of familiarity with both plaintiffs' pursuit of attack on their convictions, as all of their numerous federal petitions—both habeas corpus and otherwise—have been forwarded to this member of the court for decision.

Plaintiffs' suit in this regard is very similar to the one presented to the Fourth Circuit in Gatling v. Midgett, No. 14,863 mem. dec. (4th Cir., filed June 9, 1971). There the plaintiff alleged in a § 1983 action against state deputy sheriffs that he had been subjected to an illegal and unlawful arrest and search and seizure of his person and automobile without probable cause and without any arrest or search and seizure warrant. At his trial the arrest, search and seizure were held valid and plaintiff was convicted. Like plaintiffs here, Gatling did not present those matters to the state supreme court on his appeal from his criminal conviction. The Fourth Circuit said:

"In this context we think a broad rule of estoppel is appropriate: that a § 1983 civil action based on a search and seizure held valid in a criminal trial cannot be maintained so long as the criminal judgment of conviction remains undisturbed. Federalism, we think, requires such a result. It is difficult to conceive of a more abrasive example of indifference to state judicial process than to allow a civil action to proceed in a federal court on a fact hypothesis finally adjudicated and rejected in a presumably valid state criminal proceeding." Slip Opinion at 2–3.

In the present case, plaintiffs' criminal convictions, though attacked at every level, stand undisturbed. It would be most curious for this court to entertain a damage suit against the officers who conducted the search complained of, while the same search has been upheld in criminal proceedings which resulted in the plaintiffs' convictions. Under the rule of estoppel discussed in Gatling, plaintiffs have failed to state a claim upon which relief can be granted.[2] Accordingly, the Motion of defendants Bryan and Hunt to dismiss the Complaint as against them should be granted.

■ If for the above reasons the Complaint should be dismissed as to Bryan and Hunt, who filed the instant Motion, should it also be dismissed as to the rest of the defendants, who have not so moved? Under the circumstances present here, the court thinks so. The remaining defendants are represented by the Attorney General of the State of South Carolina, who has filed an Answer on their behalf. The Answer asserts a general denial, alleges that the Complaint fails to state a cause of action cognizable in this court, and contends that the Complaint is "so vague and conclusory" that the defendants are unable to understand the gravamen of the offense with which they are charged.

2. The court cites *Gatling*, an unreported memorandum decision, with some trepidation. In Jones v. Superintendent, Virginia State Farm, 465 F.2d 1091 (4th Cir. 1972), the court held that memorandum decisions need not be afforded precedential value:
"But because memorandum decisions are not prepared with the assistance of the bar, we think it reasonable to refuse to treat them as precedent within the meaning of the rule of stare decisis. We prefer that they not be cited to us for an additional reason: since they are unpublished and generally unavailable to the bar, access to them is unequal and depends upon chance rather than research. For this reason, also, we will not ourselves in published opinions cite or refer to memorandum decisions. But although unmentioned, it should be clearly understood by the bench and bar that any prior memorandum decision in conflict with a subsequently published opinion is to be considered overruled." 465 F.2d at 1094.
In *Jones*, plaintiff petitioned for rehearing because the court's initial decision varied from its holding in an earlier memorandum case; thus the court established the rule quoted above that memorandum decisions were entitled to no precedential value. But this court is aware of no other decision of the Fourth Circuit which is as much on all fours with the instant case as *Gatling*, and to this court's knowledge the principle of estoppel enunciated in *Gatling* has not been subsequently overturned by any reported decision. Thus while *Gatling*, in the strictest sense, may not have stare decisis control over the instant case, this court thinks the principle stated there remains valid and should be applied to the case at bar.

The Answer concludes with a prayer that the action be dismissed.

In United States ex rel. Gittlemacker v. Commonwealth of Pennsylvania, 281 F.Supp. 175 (E.D.Pa.1968), aff'd. sub nom. 413 F.2d 84 (3rd Cir. 1969), cert. denied 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), the district court held that where a Complaint failed to state a cause of action under the Civil Rights Act, which was the only basis for federal jurisdiction, the court would dismiss the action against all defendants even though only certain defendants had made a Motion to Dismiss. Similarly, in this case, the court has determined that the Complaint fails to state a claim against the moving defendants; obviously on the same grounds it fails to state a claim against the remaining defendants. To retain jurisdiction of this case while awaiting a formal Motion on behalf of the South Carolina defendants, either through a pretrial Motion or at a hearing, would be a waste of the court's —and of the litigants'—time. By their Answer, the South Carolina defendants "have taken a sufficiently adversary stance to permit dismissal of these complaints which fail to state a claim against them," *Gittlemacker, supra,* 281 F.Supp. at 178.

■ This court is well aware of the rule that prisoner petitions, as any other complaint filed in this court, may not be dismissed on the pleadings unless it appears to an absolute certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L. Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Campbell v. Beto, 460 F.2d 765 (5th Cir. 1972). For the reasons stated above, the court thinks this case appropriate for dismissal on the pleadings.

■ As Justice Rehnquist pointed out in his dissenting opinion in Cruz v. Beto, *supra,* the Supreme Court has never dealt with the special procedural problems presented by prisoners' civil suits. The problems are many. The number of such suits grows at an alarming rate, and decisions of the higher federal courts mandate a hearing in most instances. If a hearing must be held, it is essential if the hearing is to have any meaning that counsel be appointed to represent the indigent prisoner, yet there is no provision for counsel to be compensated in such a case. The court has a duty to see that all legitimate prisoner petitions may be aired in open court; it likewise has a duty to protect the court system and the bar from being bogged down in a mire of frivolous prisoner suits. In performing such duties, the court must screen prisoner petitions to determine at the outset if any fail to state causes of action cognizable in the court. If they obviously do not, they should be dismissed at the pleadings stage, without reaching the time-consuming and expensive method of disposition at a hearing. As the Fifth Circuit recently stated in Campbell v. Beto, *supra:*

"Finally, there remains a question regarding the procedural approach of the District Court to the present case. We think it the better course in judicial administration in this dynamic field for the District Court to allow the case to be docketed without prepayment of costs and then, if appropriate, dismiss instead of refusing to allow the case docketed even though at that stage it is judicially determined that the complaint does not state a claim on which relief could be granted. . . . In this way, although evidentiary hearing might well properly be refused thereafter, any further order in the case would constitute an adjudication on the merits, allowing subsequent identical petitions to be dealt with very easily on res judicata grounds—in addition to the positive advantage of minimizing discrimination in treatment based on wealth." 460 F.2d at 768.

In the instant case, the court has allowed (as it does as a matter of course

with other similar suits) the plaintiffs to proceed in forma pauperis. The Complaint was filed and served without prepayment of costs. As a result, one set of defendants answered, while another filed a Motion to Dismiss. Thus issues were joined by all parties as to whether the Complaint stated a cause of action upon which relief could be granted. Concluding that there are no facts which plaintiffs could prove which would entitle them to relief under the cause of action stated in their Complaint, a hearing is not necessary and the Complaint should therefore be dismissed as to all parties.

And it is so ordered.