**Sterling A. FISHER, Plaintiff,**

v.

**John W. TURNER, Warden at the Utah State Prison, and Clarence Cleland, Sergeant at the Utah State Prison, Defendants.**

**Civ. No. 128–71.**

United States District Court,
D. Utah.

Jan. 4, 1972.

Robert L. Backman, Salt Lake City, Utah, for plaintiff.

Lauren N. Beasley, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION

ALDON J. ANDERSON, District Judge.

The above case came on for hearing on December 22, 1971 on defendants' motion for summary judgment.

Plaintiff claims that on the 12th day of March, 1971 he was an inmate in the maximum security section of the Utah State Prison and that he asked a guard, Jack Waldron, for permission to leave a certain office area and go to the main corridor of the maximum security section in order to return to his cell, and thereafter Officer Waldron gave such permission; that upon going through the steel barred door into the main corridor the defendant, Sergeant Clarence Cleland, a guard at the Utah State Prison, intentionally, forcefully, and without cause or provocation pulled the steel door shut and shoved the door inward with such force that it struck the plaintiff.

Plaintiff further claims that Sergeant Clarence Cleland intentionally and forcefully struck the plaintiff with his fists; that the plaintiff was knocked to the concrete floor and suffered injuries to his person. Plaintiff claims that the action on the part of Sergeant Clarence Cleland was done under color of statute and deprived him of a right, privilege, or immunity secured by the Constitution and the laws of the United States in that he is a victim of police brutality and of cruel and unusual punishment.

Defendants claim that Sergeant Cleland was ordered on the 12th day of March, 1971 by Lt. Richards to keep all inmates out of the main corridor of the maximum security section at the Utah State Prison, due to the fact that the prison psychiatrist wanted the corridor clear when he came to talk to a disturbed inmate; that Officer Jack Waldron came through the steel door into the main corridor and was followed by plaintiff Sterling Fisher into the area of the door; that Sergeant Cleland attempted to shut the door and plaintiff Fisher was in the doorway; that he was asked to move and refused to move; that Officer Cleland then put his hand on the shoulder of plaintiff Sterling Fisher and pushed him out of the area of the door and shut the door; that Sergeant Cleland at no time knew that plaintiff Fisher had been struck by the door or had been pushed to the ground.

Defendants claim that Sergeant Cleland's acts were not wilful nor intentional and that in taking the action in preventing plaintiff Sterling Fisher from going into the main corridor as aforesaid the defendants were acting solely within the bounds of ordinary prison administration and discipline and that the plaintiff Sterling Fisher has not been subjected to any deprivation of his civil rights.

Based upon these facts the plaintiff has brought a claim for damages under the Civil Rights Act, 42 U.S.C.A. § 1983.

The parties are in agreement that two essential elements must be proved in order to establish liability under the Act: (1) that the plaintiff is subjected to a deprivation of right, privilege, or immunity secured by the Constitution or laws

of the United States, and (2) that in said deprivation the defendant acted under "color of law." Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963). The defendants in this case have conceded that the requirement of "under color of law" has been met in this case. The basis for the defendants' motion for summary judgment is that there has been no deprivation of rights under the laws or Constitution of the United States.

The law is well settled that a plaintiff cannot support a claim under the Civil Rights Act by a mere averment that a tort was committed on his person under color of state law even if such was intentional. Kontos v. Prasse, 444 F.2d 166 (3d Cir. 1971); Bethea v. Crouse, 417 F.2d 504 (10th Cir. 1969). The plaintiff in this instance, however, claims that the alleged conduct of the defendants, resulting in physical injury, amounted not only to a tort but also that it was of such a nature and severity as to deny him the right to be free from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States.

In the *Crouse* case, the court, after referring to the essential elements noted above, observed that the primary question at the threshold of the hearing of the motion for summary judgment was whether or not a genuine factual dispute existed on the question of cruel and unusual punishment as those terms are used in the Eighth Amendment. In defining what constituted "cruel and unusual punishment," the court approved the standard that the act or acts must represent an "assault upon plaintiff * * * of such a character as to shock [the] general conscience or to be intolerable to fundamental fairness." (See p. 507). The court then discussed the "hands off" policy in matters of prison administration and declared:

"We have said that the basic responsibility for the control and management of penal institutions, including the discipline, treatment, and care of those confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials." See Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Banning v. Looney, 213 F.2d 771 (10th Cir. 1954); Powell v. Hunter, 172 F.2d 330 (10th Cir. 1949).

Nonetheless, the court acknowledged the need for balancing the necessity for free hand prison administration against the basic constitutional rights of the prisoner and observed that in this area the "hands off" doctrine operates reasonably to the extent that it prevents judicial review of deprivations which are necessary or reasonable concomitants of imprisonment. The same problem is presented here.

A fair construction of the facts contended for leads to the conclusion that the plaintiff was seeking to enter the corridor, claiming the right by prior permission, and Sergeant Cleland forcefully prevented the plaintiff from so entering. There is a controversy about the extent of the force used, but there seems no reasonable doubt but that the defendant Cleland's exercise of force began and ended with an effort to keep plaintiff from entering the main corridor, in accordance with the order he had received. Therefore, even if the defendants' acts were tortious, whether intentional or negligent, they would not be judicially reviewable unless the acts constituting the claimed assault were of such a character as to shock the general conscience or to be intolerable to fundamental fairness to the extent that the constitutional right to be free from cruel and unusual punishment had been violated. If they were, then it could be said there was a clear abuse or caprice shown upon the part of the prison officials. If not, then plaintiff's claim is not here reviewable.

■ Assuming the truth of the claim of the plaintiff with respect to what happened, in this court's opinion that which occurred cannot reasonably be construed to be an intended punishment or injury which, in nature and severity, could be said to constitute "an assault upon the plaintiff of such character as to shock the general conscience or to be intolerable to fundamental fairness to the extent that the constitutional right to be free from cruel and unusual punishment had been violated." It follows that there was no clear abuse or caprice shown on the part of prison officials. Consequently, judicial review is not justified in this case. See Coppinger v. Townsend, 398 F.2d 392 (10th Cir. 1968); Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Pigg v. Patterson, 370 F.2d 101 (10th Cir. 1966).

At best, plaintiff's allegations, therefore, would appear to entitle him to bring a common law action for tort, and not one under the Civil Rights Act for denial of rights, privileges, or immunities under the laws or Constitution of the United States.

For the above reasons, defendants' motion for summary judgment should be granted.